Filed 3/17/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| A.H. et al.,<br><br>Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>Respondent;<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>Real Party in Interest. | G061648<br><br>(Super. Ct. Nos. 20DP1070, 20DP1071, 20DP1072)<br><br>O P I N I O N |

PURPORTED APPEAL from an order of the Superior Court of Orange County, treated as a writ of mandate. Mary Kreber Varipapa, Judge. Appeal dismissed. Writ petition denied.

Marisa D. Conroy, under appointment by the Court of Appeal, for Petitioner A.H.

Jacob I. Olson, under appointment by the Court of Appeal, for Petitioner S.A.

No appearance for Respondent.

Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Real Party in Interest.

\*          \*          \*

Under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), a California court has temporary emergency jurisdiction in a juvenile dependency matter if a child is present in the state and there is an emergency need to protect the child from abuse. (Fam. Code, § 3424, subd. (a).)[1] Thereafter, if the child's home state declines to exercise jurisdiction, the California court then has the "exclusive jurisdictional basis for making a child custody determination." (§ 3421, subd. (b).)

In August 2020, police went to a motel room to investigate child abuse. Three children were present: K.H. (an eight-year-old boy), A.H. (a five-year-old girl), and P.A. (an 18-month-old girl). The boy had visible bruises on his face and arms; the older girl had multiple bruises on her legs. Police arrested S.A. ("Mother"), and A.A. ("Husband" and father of the younger girl), who had brought the three children from Texas to California about three weeks prior. At that time, A.H. ("Father" of the two older children) was incarcerated in Texas for aggravated assault with a deadly weapon.

The children were taken into protective custody. The next day, Orange County Social Services Agency (SSA) filed a dependency petition, and the juvenile court took "emergency jurisdiction . . . pursuant to UCCJEA." About a week later, the court phoned a Texas state court judge who "cede[d] jurisdiction to the state of California." SSA placed the children in foster care with Dana C. ("Caregiver").

Mother pleaded guilty to two counts of child abuse, served a 120-day jail sentence, and returned to Texas. Husband's disposition and whereabouts are unknown. Father is no longer incarcerated and lives in Texas.

In March 2021, the juvenile court sustained the dependency petition, declaring the children to be dependents of the court. Six months later, Mother filed a motion to transfer the matter to the State of Texas.

In July 2022, the juvenile court again spoke to a Texas judge and found the

---

[1] Further undesignated statutory references are to the Family Code.

state continued to decline to exercise jurisdiction under the UCCJEA. Father filed an appeal. Father contends the juvenile court never had subject matter jurisdiction under the UCCJEA and all the juvenile court's orders must be reversed. Mother joins.

The juvenile court's UCCJEA rulings are not final, appealable orders, but we will exercise our discretion and treat this appeal as a writ of mandate.[2] (See, e.g., *A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 353-354 [appellate court found writ relief warranted in parental challenge to lower court's UCCJEA ruling].)

We find substantial evidence to support the juvenile court's UCCJEA rulings. After the court invoked emergency temporary jurisdiction, Texas then ceded subject matter jurisdiction to California. Although the Texas judge purported to cede jurisdiction for only so long as the parents were in California, such equivocation is untenable. Under the UCCJEA, there cannot be concurrent jurisdiction; only one state can have jurisdiction at a time. Further, jurisdiction must be determined by appropriate courts under the terms of the UCCJEA, and not by the decisions of the offending parents.

Here, the juvenile court found Texas had ceded subject matter jurisdiction of the instant dependency matter to California. We find substantial evidence to support that ruling. The juvenile court then made jurisdictional orders to protect the abused children. Under the relevant provisions of the UCCJEA, the California juvenile court generally retains exclusive, continuing subject matter jurisdiction, unless and until California cedes jurisdiction back to Texas. (See § 3422, subd. (a)(1).) Thus, we deny the parents' request to reverse all the juvenile court's orders.

---

[2] On the date of the filing of this appeal, there had been no dispositional order, which is the first appealable order in a dependency case. (See *In re T.W.* (2011) 197 Cal.App.4th 723, 729.) Father cites *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1279 (*Schneer*), for the proposition: "An order determining jurisdiction under the UCCJEA is an appealable order." But *Schneer* is distinguishable. While the substantive issue in *Schneer* involved the UCCJEA, the appeal itself was from an order of dismissal. (See *In re Sheila B.* (1993) 19 Cal.App.4th 187, 197 ["An order of dismissal constitutes a judgment for all purposes and, as such, is generally appealable"].)

3

# I

## FACTS AND PROCEDURAL BACKGROUND

On Monday, August 24, 2020, at about 1:21 a.m., Buena Park police were dispatched to a motel room for a child abuse investigation. The police saw bruising and welts on the boy's face, as well as on his arms and shoulders. The pattern of bruises indicated he had been hit with the studded side of a belt. The boy said he had fallen off a swing three weeks earlier; he later said he had fallen while running. The boy initially did not want to show his back to police, who eventually saw bruises on his back, legs, and torso. It was later discovered the older girl had multiple bruises on her legs.

Mother said she had "whooped" her son two nights ago, but nothing had happened that night. Mother said she disciplined her son for being disrespectful. Mother said she was so enraged that while she was hitting the boy with the belt, she wasn't paying attention to the marks on his body. When asked about the injuries to his face, Mother said she did not know about those injuries, and she was "just seeing that." Husband told police the boy was playing outside and fell, causing the injuries to his arms and face. The family had been staying at the motel since August 1, 2020.

The police arrested Mother and Husband for cruel or inhuman corporal punishment on a child. (Pen. Code, § 273d, subd. (a).) The police took the parents to the Orange County jail, took the children into protective custody, and arranged for Child Abuse Services Team (CAST) interviews.

During his CAST interview, the boy initially stated he sustained the injuries when he fell and was "nervous" about speaking about what happened. He explained he was instructed "not to say what goes on in the house cause they don't want to go to court." The boy said when he gets hit with a belt, "I can't scream cause the people next door will call the police." During the "worse whooping" a few weeks earlier, he was hit in the leg with a belt until blood came out. The boy explained that if Mother or Husband ever found he was talking about the whoopings: "They might whoop me." The boy

4

eventually admitted the marks on his face were from Mother hitting him with a belt. When shown a picture of the marks on his back, he teared up. The boy said Mother had hit him with a belt on his back until Husband grabbed her and told her "that's enough." Mother told him that if the police ever came to speak to him that she and Husband need "to be present because bad things can happen when the police are there."

During her CAST interview, the older girl said she was asleep when her brother got whooped that night. She stated someone called the police because they saw he "had owies everywhere." The older girl said there were things she had been told not to say. She stated that if she disclosed what happened, "Momma is going to whoop me some more." The older girl disclosed she would scream when she gets whooped. She said Mother hits the children with a black jump rope that she twists in her hand. The older girl had marks on her legs, back, behind and forehead.

The boy later disclosed to Caregiver other multiple instances of abuse. The boy said that he and the older girl "had to take their whoopings in silence. They were both made to stand in the corner for hours at a time and not permitted to sit. They were withheld food if they were on punishment." He disclosed "this went on for days at a time." The boy stated "his mom would whip him so hard on his hamstrings that he couldn't lay down to sleep at night."

The boy talked about one incident where he "was hurting really bad and he moved his foot so she taped his feet to the floor. She continued to whoop him but he said that he broke free and started running. He said he was going to run to his grandma[']s house but his mom got in the car and caught him." The boy said Mother went to the store and bought "super glue. She put it on my feet [and] my hands and stuck all of them to the floor and then whoooped me. She used a knife to free one of my hands and then gave me the knife to free my other hand and my feet." He disclosed another incident where Mother "strapped him to the couch with tape, knocked down the curtains and rod . . . and then proceeded to whoop him with the rod." The boy said this punishment "'was the

5

worst one ever'" because Mother "laid him flat out on the couch face down and sat on him for one hour." The boy disclosed that "he couldn't breathe."

The boy disclosed that on the night of the parent's arrest, Mother "started off trying to whoop him but he was moving around too much. She told him that she was going to kill him. The mother instructed [Husband] to take over and stated 'now you're really going to die.' The boy said that [Husband] was taking it too far and he was screaming to his mom 'help me he's going to kill me' but she was 'just standing there watching.' He said that he could feel his hits 'all the way to my bones.'"

*Juvenile Court Proceedings*

On August 25, 2020, SSA filed a juvenile dependency petition. The petition alleged serious physical harm, failure to protect, serious emotional damage, no provision for support, parental cruelty, and abuse of sibling. (Welf. & Inst. Code, § 300, subds. (a)-(c), (g), (i), (j).)

On August 25, 2020, SSA filed a detention report; Mother and Husband had been interviewed at the jail. Mother stated she and Husband had been living in Orange County for three weeks, and prior to that they were in Houston, Texas. Mother said she had no contact information about Father. SSA contacted the Harris County Department of Children in Family Services in Houston, Texas. There were three prior allegations of child neglect against Husband, which had been designated "Ruled Out."

On August 26, 2020, the Orange County superior court issued a criminal protective order. Mother was the restrained person; the protected persons were the boy and the older girl.

On August 27, 2020, SSA filed a first amended petition and an addendum report. The report noted the children were to be placed in the care of a licensed foster

6

home.[3]  The report noted Father was in custody in Houston, Texas.  Mother had contacted SSA's social worker.  Mother said she had been released from custody and claimed the charges had been dropped.

On August 28, 2020, the juvenile court conducted an initial detention hearing.  Mother and Husband appeared remotely.  The court appointed counsel to represent the parents and the children.  Mother's counsel reported Father had "paid minimal child support and seen the kids about maybe four times a year roughly."  Mother's counsel stated she intends to stay in Orange County:  "She said this is a better place for her family.  They wanted to get the kids away from some of the influences that were there in Houston.  [Husband] has some job opportunities out here.  [¶]  They're currently in a hotel in Buena Park, but she said they're on the brink of securing a long-term lease in a regular residential area . . . ."

The juvenile court found "it is of immediate and urgent necessity for protection of the [children] that the [children] be detained under the protective custody of Social Services Agency."  The court ordered "no physical discipline of the children for any reason."  The minutes note:  "Court takes emergency jurisdiction of this matter pursuant to UCCJEA."

On September 3, 2020, the juvenile court conducted a review/progress hearing.  The minutes note:  "On this date, Judge Gary Moorhead spoke with Judge Natalie Oaks in Harris County, TX . . . re:  UCCJEA compliance.  They will waive juris unless and until parents return to Houston.  Current address given is vacant."

On September 9, 2020, the juvenile court conducted a review/progress hearing.  The minutes note:  "Judge Moorhead conferred with Judge Oaks in Houston, Texas on 9-3-20.  The home state cedes jurisdiction to the state of California.  The matter

---

[3] This procedural summary focuses on jurisdictional matters relating to the UCCJEA, rather than children's well-being.  However, we note that according to numerous SSA reports, the children appear to be doing well in foster care.

is determined without prejudice. If the family decides to return to Texas, Judge Oaks will reassess the matter."

On September 11, 2020, Mother pleaded guilty to two misdemeanor counts of corporal injury on a child. (See Pen. Code, § 273d, subd. (a).) The superior court granted four years of informal probation with 120 days in county jail.

On September 30, 2020, SSA filed a jurisdiction/disposition report. The report noted the children were currently in the home of Caregiver (where the children remained through the pendency of these proceedings). SSA's report noted: "When [Mother was] asked about any formal custody arrangements [with Father], [she said] they went to the local child support office and did the documentation there. [Mother] stated the documents are in Houston, and she does not have them."[4]

On November 12, 2020, SSA filed addendum report #1. As to reunification issues, SSA noted Welfare and Institutions Code section 361.5 may apply as to Mother, Husband, and possibly Father.[5]

On January 12, 2021, SSA filed addendum report #2. The recommendation was to sustain the petition, order jurisdiction, and transfer the matter to Texas. SSA's social worker reported Mother had been released from local custody in mid-December and had called from Texas on December 30, 2020. Mother reported she was pregnant

---

[4] Mother also asserted to SSA's social worker that she was the "custodial parent." However, a Texas state court judge later told the juvenile court there was a *child support order* made by the court in 2016, but this was not a "placement order or any type of custody or parenting type order." (See § 3402 ["'Child custody determination' . . . does not include an order relating to child support"].)

[5] "Reunification services need not be provided to a parent or guardian . . . when the court finds, by clear and convincing evidence, any of the following: [¶] (6)(A) That the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to the child . . . and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian." (Welf. & Inst. Code, § 361.5, subd. (b)(6)(A).)

and asked about the Interstate Compact on the Placement of Children (ICPC).

On March 8, 2021, SSA filed addendum report #3. SSA's recommendation had changed and was now to sustain the petition, declare dependency, provide reunification services to Father, provide no reunification services to Mother, and make suitable placement orders with consideration of placement with relatives (the SAA recommendation remained unchanged from this point forward). The report included information on the possible placement of the children with paternal great aunt S.C. (PGA) through the ICPC. The report included a proposed case plan as to Father. Caregiver filed a motion for de facto parent status. (See Cal. Rules of Court, rule 5.534.)

On March 10, 2021, the juvenile court conducted a jurisdiction hearing. The court denied Caretaker's motion as premature. The court found Father to be the presumed father of the boy and the older girl. The jurisdiction/disposition report and addendum reports were admitted into evidence. The court found the allegations in counts one through four of the dependency petition true by a preponderance of the evidence (serious physical harm, failure to protect, serious emotional damage, and cruelty), bringing the children within the jurisdiction of the juvenile court. (See Welf. & Inst. Code, § 300 et seq.) The court continued the disposition hearing to May 11, 2021.[6]

On July 22, 2021, Caregiver filed a request for modification. (See Welf. & Inst. Code, § 388.) Caregiver asked the juvenile court to place the children in her care "to prevent the potential removal of the children to the state of Texas."

On August 10, 2021, SSA filed addendum report #8. SSA's social worker reported she had made phone contact with Father who was now out of custody and living

---

[6] As of the filing of the notice of appeal on July 29, 2022, the disposition hearing had inexplicably not yet occurred. Ordinarily, the disposition hearing can be held on the same day as the jurisdiction hearing. Generally, the disposition hearing can be continued no later than 10 court days after the jurisdiction hearing (if the child has been detained), or no later than 30 calendar days (if the child has not been detained). (Welf. & Inst. Code, § 358, subd. (a)(1) & (2).)

with his paternal great-grandmother in Texas.

On August 16, 2021, Father filed a response to Caregiver's request for modification. Father stated PGA had been approved to be a foster parent by the Texas Health and Human Services.

On September 2, 2021, Mother filed a motion to transfer the juvenile dependency case to Houston, Texas. (See Welf. & Inst. Code, § 375.)

On October 4, 2021, the juvenile court invited briefing addressing the UCCJEA, the timing of jurisdiction, and disposition. County counsel requested the court proceed with disposition hearing.

On November 29, 2021, Father filed a brief "in support of reunification services for Father, placement of the minors with relatives, and inquiry as to transfer of the matter under UCCJEA protocols."

On March 18, 2022, the juvenile court informed the parties it had earlier had a phone conversation with Texas Superior Court Judge Michelle Moore. Judge Moore reported there was a 2016 child support order between Mother and Father. Judge Moore said Texas was "assuming jurisdiction on the child support issue. It was not an order with exit orders or any type of placement order or any type of custody or parenting type order." The court said, "However, [Judge Moore] was referring the matter to the presiding judge Justice Graves-Harrington because of some complications, and she wanted to have Judge Graves-Harrington conduct the final UCCJEA case." The court stated it had scheduled a call with Judge Graves-Harrington.

On April 28, 2022, the juvenile court "informed all parties that she had a phone conversation with Judge Graves-Harrington of Harris County, Texas on April 22, 2022 at 7:00 AM California time regarding UCCJEA, that Texas is the home state and that Texas does not cede jurisdiction to California. [¶] Court declines to make orders at this time regarding the pending motions for de facto parent standing until the UCCJEA issue is fully addressed with Texas."

10

On May 25, 2022, county counsel "indicated that Texas has no intention of filing a Dependency case; That this matter does not meet the emergency threshold in Texas and that they have no concerns regarding the mother at this time." County counsel stated it "needs a directive from Harris County Court since they . . . are not ceding jurisdiction to California and they have previously indicated that Texas has been the home state since 2016."

On June 1, 2022, the juvenile court conducted a hearing concerning the UCCJEA with Judge Graves-Harrington participating (the hearing will be covered in detail in the discussion section of this opinion).

On July 22, 2022, after receiving briefing from the parties, the juvenile court found "the failure of the Texas court to assert jurisdiction, even for the purpose of assessing whether to go forward in the action, is an act that constitutes . . . continuing ceding of jurisdiction to the Orange County juvenile court."

On July 29, 2022, Father filed a notice of appeal from: "Orders of Court relating to application of UCCJEA and request for transfer to Texas."

II

DISCUSSION

The parents contend: "All orders must be reversed for lack of subject matter jurisdiction because Texas, not California, was the children's home state and substantial evidence did not show that the Texas court declined to exercise jurisdiction." (Boldfacing omitted.) Pursuant to the UCCJEA, we deny the parents' request to reverse all the juvenile court's orders.

"The UCCJEA is the exclusive method for determining subject matter jurisdiction for child custody proceedings in California." (*In re A.C.* (2017) 13 Cal.App.5th 661, 668.) "'Child custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term

11

includes a proceeding for dissolution of marriage, legal separation of the parties, neglect, abuse, *dependency*, . . . termination of parental rights, and protection from domestic violence, in which the issue may appear." (§ 3402, subd. (d), italics added.)

"The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees." (*In re R.L.* (2016) 4 Cal.App.5th 125, 136.) "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).)

Generally, "as with any statute, interpretation of the UCCJEA is a question of law we review de novo." (*Schneer*, *supra*, 242 Cal.App.4th at p. 1287.) However, "when the facts are contested, a trial court's jurisdictional finding under the UCCJEA is reviewed under the deferential substantial evidence standard." (*Id*. at p. 1286.) Under this standard: "We determine whether there is substantial evidence to support the dependency court's ruling by reviewing the evidence most favorably to the prevailing party and indulging all legitimate and reasonable inferences to uphold the court's ruling." (*In re S.B.* (2008) 164 Cal.App.4th 289, 297.)

"Failure to comply with the procedural requirements of the UCCJEA is subject to harmless error analysis." (*In re R.L.*, *supra*, 4 Cal.App.5th at p. 143.) That is, the party challenging the ruling of the lower court "must show it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Ibid*., citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The parents claim: 1) the juvenile court's September 3, 2020, finding of temporary emergency jurisdiction did not comply with the UCCJEA; 2) the court's September 9, 2020, finding of subject matter jurisdiction is not supported by substantial evidence; 3) alternatively, at some point in 2020, the juvenile court lost subject matter jurisdiction; and 4) the court's July 22, 2022, finding of subject matter jurisdiction was

12

not supported by substantial evidence.  We shall analyze each claim.

*1. The Finding of Temporary Emergency Jurisdiction*

The parents claim the juvenile court's finding of temporary emergency jurisdiction did not comply with the UCCJEA.  We disagree.

"A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse . . . ."  (§ 3424, subd. (a).)  "An 'emergency' exists when there is an immediate risk of danger to the child if he or she is returned to a parent.  [Citation.]  Although emergency jurisdiction is generally intended to be short term and limited, the juvenile court may continue to exercise its authority as long as the reasons underlying the dependency exist."  (*In re A.M.* (2014) 224 Cal.App.4th 593, 599.)

"Before a child custody determination is made under [the UCCJEA], notice and an opportunity to be heard . . . must be given to all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child."  (§ 3425, subd. (a).)  "An evidentiary hearing, such as a detention hearing, that substantially complies with the essential procedural requirements of the UCCJEA is adequate to sustain temporary emergency jurisdiction."  (*In re R.L.*, *supra*, 4 Cal.App.5th at p. 142.)

On August 24, 2020, police arrested Mother and Husband for abusing their children in a Buena Park hotel room and took them to the Orange County jail.  The three children who were present in the hotel room were taken into protective custody.  The following day, SSA filed a petition and a detention report, which summarized the police report and detailed the extensive physical abuse the boy and the older girl had been subjected to over a substantial period.

13

On August 28, 2020, the juvenile court conducted a detention hearing in which Mother and Husband were appointed counsel and appeared remotely. After reading SSA's initial reports, seeing color pictures of the two children's injuries, and listening to the arguments of the parties, the court said to the parents, "So you want to stay in California, fabulous. Welcome to Orange County. I don't know what kind of streets you live on in Texas, but there is nothing that justifies beating your children to a pulp in order to teach them a lesson."

The court found "it is of immediate and urgent necessity for the protection of the children that they be detained under the protective custody of social services agency." After making visitation and other appropriate orders, the court set future hearing dates, including the date of September 3, 2020, "for purposes of UCCJEA review." The court further ordered: "On October 14th, all parties are ordered to court at 8:30 a.m. for jurisdiction. That's your trial." At the end of the hearing, county counsel asked, "just to clarify, you are taking emergency jurisdiction pursuant to UCCJEA?" The court responded, "I am."

In short, we find substantial evidence in the record to support the juvenile court's determination of emergency jurisdiction under the UCCJEA. The parents argue: "The court did not hold an evidentiary hearing regarding emergency jurisdiction, nor did the court specify the duration of its temporary order." We disagree.

The detention hearing substantially complied with the procedural requirements of the UCCJEA. (See *In re R.L.*, *supra*, 4 Cal.App.5th at p. 142 ["An evidentiary hearing, such as a detention hearing, that substantially complies with the essential procedural requirements of the UCCJEA is adequate to sustain temporary emergency jurisdiction"].) At the detention hearing, the parents never asked to present evidence in addition to what had been received by the juvenile court before their attorneys argued their respective positions. Further, while the court did not explicitly specify the duration of its temporary order, it can reasonably be inferred that the

emergency jurisdictional order was to remain in effect until either: (a) the next hearing date regarding the UCCJEA, or (b) the date of the jurisdiction hearing.

In any event, even if we were to find a procedural error, given the children's physical injuries, the parents' cruelty to their children, and the parents' attempts to shield their crimes from the police, we would not find it reasonably probable that a result more favorable to the parents would have occurred absent the purported error. (See *In re R.L.*, *supra*, 4 Cal.App.5th at p. 143 ["Failure to comply with the procedural requirements of the UCCJEA is subject to harmless error analysis"].)

*2. The Finding of Subject Matter Jurisdiction*

The parents claim: "The juvenile court's September 9, 2020 finding of subject matter jurisdiction is not supported by substantial evidence." (Underlining omitted.) We disagree.

"The absence of personal jurisdiction is much different than the absence of subject matter jurisdiction. The lack of subject matter jurisdiction is a jurisdictional defect of the fundamental type. A trial court lacks jurisdiction in the fundamental sense where there is 'an entire absence of power to hear or determine the case.'" (*Shisler v. Sanfer Sports Cars, Inc.* (2008) 167 Cal.App.4th 1, 6.) On the other hand, "personal jurisdiction relates to the power to bind a particular *party*, and depends on the party's presence, contacts, or other conduct within the forum state." (*Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512.)

Where a state other than California has jurisdiction over a child who is present in California and "subjected to, or threatened with, mistreatment or abuse," the juvenile court in California may exercise temporary emergency jurisdiction over the abused child. (§ 3424, subd. (a).) If, however, "a California court has exercise[d] temporary emergency jurisdiction . . . , that court may not address the merits of the dependency petition or otherwise make a final child custody determination until it

15

properly asserts jurisdiction under the nonemergency jurisdiction provisions" of section 3421 of the UCCJEA.  (*In re Aiden L.* (2017) 16 Cal.App.5th 508, 518.)

Under section 3421, a court may assert nonemergency subject matter jurisdiction under one of four circumstances:  1) California is the child's home state (home state jurisdiction); 2) California is not the child's home state, but (a) the child's home state declines to exercise jurisdiction on the ground California is the more appropriate forum, (b) the child and a parent have significant connections to California, other than mere presence, and (c) there is substantial evidence in this state of the child's care, protection, training, and personal relationships (significant connections jurisdiction); (3) all courts having either home state jurisdiction or significant connections jurisdiction decline to assert jurisdiction on the ground California is the more appropriate forum; or 4) no other state has either home state or significant connections jurisdiction. (See *In re E.R.* (2018) 28 Cal.App.5th 74, 79-80.)

The UCCJEA provides:  "A court of this state may communicate with a court in another state concerning a proceeding arising under this part." (§ 3410, subd. (a).)  "The court may allow the parties to participate in the communication.  If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made."  (§ 3410, subd. (b).)  Generally, "a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record."  (§ 3410, subd. (d).)  "For the purposes of this section, 'record' means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form."  (§ 3410, subd. (e).)

"The UCCJEA ensures that only one state has jurisdiction to make 'child custody determinations'" at any one point in time. (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037.)  "Indeed, concurrent assertion of jurisdiction by more than one court was one of the chief problems that led to the

16

enactment of the UCCJEA." (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 497.)

On September 3, 2020, the juvenile court presided over a review/progress hearing, which occurred about a week after the detention hearing. The minutes note: "On this date, Judge Gary Moorhead spoke with Judge Natalie Oaks in Harris County, TX . . . re: UCCJEA compliance. They will waive juris unless and until parents return to Houston. Current address given is vacant."

On September 9, 2020, there was another hearing. The minutes note: "Judge Moorhead conferred with Judge Oaks in Houston, Texas on 9-3-20. The home state cedes jurisdiction to the state of California. The matter is determined without prejudice. If the family decides to return to Texas, Judge Oaks will reassess the matter."

Here, the children's home state was not California because they had not lived in this state with "a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).) Based on the information available to the juvenile court, Texas was the children's home state. The court therefore promptly and properly communicated with a Texas state court judge, who declined to exercise subject matter jurisdiction over the juvenile dependency matter and ceded jurisdiction of the dependency case to California, presumably because the judge concluded California was "the more appropriate forum to determine the custody of the child[ren]." (§ 3421, subd. (a)(3).)

The UCCJEA provides that "a court of this state" that has made an initial custody determination under section 3421 "has exclusive, continuing jurisdiction over the determination until either of" two delineated circumstances occur: "(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships. [¶] (2) A court of this state or a court of another state determines that *the child*, the child's parents, and any person acting as a parent do

17

not presently reside in this state." (§ 3422, subd. (a)(1) & (2), italics added.)

Although the Texas court judge purported to cede jurisdiction only so long as the parents remained in California, that equivocation was not legally tenable. The definition of the word "cede" means: "To yield up; to assign; to grant; to surrender; to withdraw. Generally used to designate the transfer of territory from one government to another." (Black's Law Dict. (6th ed. 1990) p. 223, col. 1.) Indeed, under the UCCJEA, only one state government can have subject matter jurisdiction of a family law matter at any point in time. (See *In re Marriage of Nurie*, *supra*, 176 Cal.App.4th at p. 497 ["concurrent assertion of jurisdiction by more than one court was one of the chief problems that led to the enactment of the UCCJEA"].)

In sum, the record includes the juvenile court's minute orders, which summarized the Texas judge's declination to assert subject matter jurisdiction. Further, there was no evidence of any other states asserting jurisdiction. Thus, we find substantial evidence to support the court's assertion of nonemergency subject matter jurisdiction under section 3421 of the UCCJEA. (See § 3421, subd. (a)(3).)

The parents claim the juvenile court did not inform the Texas judge that Father was in jail at the time of UCCJEA phone call on September 9, 2020. The parents argue: "The omission of this critical information was error." The parents presume if the Texas judge would have been told of this "critical information" then the judge "would likely have asserted jurisdiction under the UCCJEA."

Prior to the UCCJEA phone call, SSA filed a report indicating Father (the father of the two older children) was residing in Houston, Texas, although his address was unknown. In fact, Father was incarcerated in Texas at that time. We do not know the scope of the information communicated to the Texas judge about Father. But in any event, we are doubtful the Texas judge would have made a different decision regarding jurisdiction had the judge known Father was incarcerated in Texas. The three children were in California at that time. And Mother and Husband (the father of the younger girl)

18

were in an Orange County jail and were certainly not going anywhere soon, given the child abuse charges pending against them. We cannot imagine why the Texas judge would want to have three children—all by themselves—sent back to Texas.

In any event, in a substantial evidence review, we cannot engage in speculation. (See *Wise v. DLA Piper LLP* (US) (2013) 220 Cal.App.4th 1180, 1188 ["'speculation is not evidence, less still substantial evidence'"].) Indeed, we must presume "all legitimate and reasonable inferences to uphold the court's ruling." (*In re S.B.*, *supra*, 164 Cal.App.4th at p. 297.) Again, we find substantial evidence to support the juvenile court's finding of subject matter jurisdiction; the parents' speculative argument concerning the court's UCCJEA phone call does not alter our analysis.

*3. The Purported Loss of Subject Matter Jurisdiction*

The parents claim: "Even if this Court finds the juvenile court correctly found jurisdiction at the September 9, 2020 hearing, the California court was without jurisdiction once it learned of the Texas custody order and the parents were residing in Texas." (Underlining omitted.) We disagree.

The general rule of the UCCJEA, subject to certain delineated exceptions, is that once the court of an appropriate state—that is, one having jurisdiction under its terms—has made an initial child custody determination, that court obtains exclusive, continuing subject matter jurisdiction over the child. (*In re E.W.* (2019) 37 Cal.App.5th 1167, 1171.) "'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term *does not* include an order relating to child support or other monetary obligation of an individual." (§ 3402, subd. (c), italics added.) "'Initial determination' means the first child custody determination concerning a particular child." (§ 3402, subd. (h).)

On August 28, 2020, the juvenile court conducted a detention hearing and

19

found "it is of immediate and urgent necessity for protection of the child[ren] that the child[ren] be detained under the protective custody of Social Services Agency." The minutes note: "Court takes emergency jurisdiction of this matter pursuant to UCCJEA." On September 3, 2020, the Texas state court judge declined to exercise jurisdiction, and ceded jurisdiction to the State of California, consistent with the provisions of section 3421. (See § 3421, subd (a)(3) [all courts having either home state jurisdiction or significant connections jurisdiction have declined to assert jurisdiction].)

When the juvenile court announced its UCCJEA ruling on September 9, 2020, it had already made an initial child custody determination concerning the children; therefore, the California court had already obtained exclusive, continuing subject matter jurisdiction over the children under the UCCJEA. (See § 3422, subd. (a).) Further, neither of the two exceptions to exclusive, continuing jurisdiction rule applied. That is, no California court had ceded subject matter jurisdiction back to the State of Texas, and *the children* still resided in California. (§ 3422, subd. (a)(1) & (2).)

Generally, "a court of this state may not modify a child custody determination made by a court of another state." (§ 3423.) Relying on section 3423, the parents argue "the California court was simply without jurisdiction to modify an existing out of state custody order." They are mistaken because there was no existing out of state custody order, according to the information provided by the Texas state court judge. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 881 (*Austin J.*).)

In *Austin J.*, *supra*, 47 Cal.App.5th at page 877, the Los Angeles County Department of Children and Family Services (DCFS) filed a juvenile dependency petition alleging jurisdiction over seven children living with their mother. The court later sustained the petition, "then removed the children from the parents and placed them in DCFS's custody with directions to place them in foster care." (*Id*. at p. 879.) On appeal, the mother argued, "the juvenile court lacked subject matter jurisdiction over the case under the UCCJEA because North Carolina had continuing exclusive jurisdiction over

20

the children and any issues regarding their custody and care." (*Id*. at p. 880.)

The Court of Appeal disagreed: "Mother relies on Family Code section 3423. That section generally prohibits a California court from modifying child custody orders made by a court of a different state. [Citation.] It does not, however, preclude a California court from exercising jurisdiction over a child merely because a different state court has previously made orders regarding the same child. DCFS did not request, and the juvenile court did not make, any modification of an order made by the North Carolina court. Section 3423, therefore, is inapposite. [¶] Based on the record before us, we conclude the juvenile court had subject matter jurisdiction under the UCCJEA when DCFS filed its petition." (*Austin* J., *supra*, 47 Cal.App.5th at p. 881.)

Here, as in *Austin J*., SSA did not request, and the juvenile court did not make any modification of a *custody order* or any other order made by a Texas court. In 2016 there was a prior *child support order* made in Texas between Mother and Father; however, there was no prior custody order. (See § 3402, subd. (c) [a "'Child custody determination' . . . does not include an order relating to child support"].) Therefore, section 3423 is inapposite. Based on the record before us, the juvenile court had subject matter jurisdiction throughout this dependency case and there is nothing to indicate the California court somehow lost jurisdiction at any point.

*4. Renewed Subject Matter Jurisdiction Finding*

The parents claim: "The juvenile court's July 14, 2022 finding of subject matter jurisdiction under the UCCJEA is not supported by substantial evidence."[7] (Underlining omitted.) We disagree.

Generally, "when a home state declines jurisdiction in any manner that

---

[7] In Father's opening brief, he appears to have mistakenly identified the date of July 14, 2022, rather than the date of the juvenile court's last UCCJEA ruling on July 22, 2022. There are no minute orders or transcripts concerning July 14, 2022.

conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, including inaction . . . such inaction or refusal is tantamount to a declination of jurisdiction by the home state on the grounds California is the more appropriate forum under subdivision (a)(2) of section 3421." (*In re M.M.* (2015) 240 Cal.App.4th 703, 717.) In *In re M.M.*, the appellate court refused to adopt the parent's position that the home state must decline jurisdiction by an express order and make a finding that California is a more appropriate forum, as this would create a rule that could leave a child in "limbo between two forums" if a home state refused to commit, one way or the other, to exercise jurisdiction over the child. (*Id*. at pp. 716-717 ["such a result would be antithetical to our dependency scheme and the public policy underlying it, which favors the prompt resolution of dependency proceedings"].)

On June 1, 2022, the juvenile court conducted a UCCJEA follow-up hearing with all the parties and Presiding Judge Graves-Harrington of Harris County, Texas. County counsel, appearing on behalf of SSA, asked for direction from the Texas court: "Because Harris County is not filing a dependency case, we need direction from the court as to what the court is ordering in regards to these children because the court is not allowing us to do disposition here and Harris County is not filing a case, so we are at an impasse. We don't know what to do next."

Judge Graves-Harrington stated, "it is correct that Harris County is the home state and Harris County is not ceding the jurisdiction. As we stated last time around, there was emergency jurisdiction extended, or that was assumed by Orange County while the emergency existed; however, the court of continuing exclusive jurisdiction with the 246th district court had never been contacted regarding jurisdiction of the children until now. It is my understanding that there was another court in Harris County that was contacted regarding jurisdiction of these children; however, it was not the court of continuing exclusive jurisdiction. At this time, this court has no authority to order the department in Orange County to take any steps or actions; however, the only

22

thing I can do is advise that Orange County does not have jurisdiction over these children; therefore, any action or orders that are rendered, at this time, any judgment signed would be void in regards to the children. So I can't tell you how to proceed from there. . . . I can't request you all to do anything. The only thing that I can do is state this court's position on the jurisdictional matters."

County counsel asked, "Is the court ordering return of the children, then?" Judge Graves-Harrington responded, "Because I don't have an open case, so I can't make any orders. I can't order you all to do anything because I don't have a case here. So it would have to be the Orange County court that dismisses the case, and by default, the children would be returned to Harris County." County counsel stated, "at this point in time, we need direction from the court as to how to get these children back to the parents. Are the parents going to come pick them up? Are we bringing them to Texas? Because if we don't have jurisdiction over the children, we can't make any sort of orders as to the children." After hearing further argument from the parties, and requesting written briefs, the court continued the matter.

On July 22, 2022, the juvenile court found, "emergency jurisdiction . . . was taken by the court with the initial petition being filed. The court notes that that is emergency jurisdiction that was taken at that time; and that at the time the court assessed the UCCJEA call, a determination was made; at that time, the Texas court ceded jurisdiction; at that time, this court accepted jurisdiction; and this court finds that that is not emergency jurisdiction; that that is actual jurisdiction that was taken at the time of the UCCJEA call." After reviewing the history of the case, the court concluded, "as to the issue of jurisdiction, at this time, the court finds that the failure of the Texas court to assert jurisdiction, even for the purpose of assessing whether to go forward in the action, is an act which constitutes further succession of ceding of jurisdiction or continuing ceding of jurisdiction to the Orange County juvenile court."

Here, as the juvenile court properly stated, temporary emergency

23

jurisdiction of this dependency case was initially declared in August 2020, and in this opinion, we have found substantial evidence to support that ruling. (See § 3424.) In September 2020, there was a UCCJEA phone call with Texas state court Judge Natalie Oaks, who ceded jurisdiction of the matter to the State of California, and we have found substantial evidence to support that ruling. (See § 3421, subd. (a)(1)-(4).) In March 2021, the juvenile court sustained the dependency petition, declaring the children to be dependents of the court and making an initial child custody determination, meaning California now has exclusive and continuing jurisdiction under the UCCJEA. (See § 3422.) In short, given Judge Grave-Harrington's explicit declination to assume jurisdiction of the instant case, we find substantial evidence to support the juvenile court's July 22, 2022, renewed finding of subject matter jurisdiction under the UCCJEA.

Citing section 3453, Father argues: "The juvenile court's refusal to recognize the continuing and exclusive jurisdiction of the Texas court violated the full faith and credit clause." We disagree.

In relevant part, section 3453 provides: "A court of this state shall accord full faith and credit to *an order* issued by another state, and consistent with this part, enforce a child custody determination by a court of another state . . . ." (Italics added.)

Here, Judge Graves-Harrington of Texas specifically declined to make any orders and stated there was no pending case: "Because I don't have an open case, so I can't make any orders. I can't order you all to do anything because I don't have a case here." Judge Graves-Harrington also shared the court's legal opinion as to the general question of existing UCCJEA jurisdiction in the State of California, but that opinion was not binding upon the juvenile court (or this court). (See *People v. Troyer* (2011) 51 Cal.4th 599, 610 [out-of-state cases not binding on California courts]; *Episcopal Church Cases* (2009) 45 Cal.4th 467, 490 ["out-of-state decisions are not binding on this court"]; *Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450, 455; *Ammerman v. Callender* (2016) 245 Cal.App.4th 1058, 1086 ["'Where out-of-state authority is at odds with

24

California law, it lacks even persuasive value'"].)

        In conclusion, we find no errors by the juvenile court regarding any of its challenged UCCJEA rulings.

III

DISPOSITION

        The appeal is dismissed.  We deny the petition for writ of mandate seeking to reverse all of the juvenile court's orders in this case.


                                  MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


DELANEY, J.

25